UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONICA SWIFT, individually and in the interest of R.M., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:16CV00314 AGF |
| SSD of ST. LOUIS COUNTY, et al., | ) ) ) |
| Defendants. | ) |

## **MEDMORANDUM AND ORDER**

This action is brought by Plaintiff Monica Swift on her own behalf and on behalf of her minor child R.M. Plaintiff's claims arise out of the denial of special education services and disability accommodation for R.M. for approximately three and one half years. The matter is before the Court on the motions to dismiss Plaintiff's amended complaint, filed by each of the four Defendants in the case: Hazelwood School District ("Hazelwood") (ECF No. 57); Special School District of St. Louis County ("SSD") (ECF No. 64); Riverview Gardens School District ("Riverview Gardens") (ECF No. 66); and the Missouri Administrative Hearing Commission ("AHC") (ECF No. 61). The three school districts argue that the Court lacks subject matter jurisdiction over the action due to Plaintiff's failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1414(l), and that Plaintiff fails to state a claim upon which relief can be granted. The AHC argues that as a state agency, it is not a proper party to the action. For the reasons set forth below all four motions to

dismiss will be granted.

## **BACKGROUND**

The amended complaint alleges the following. R.M. was born in May 2007. In 2008, she was diagnosed with schizencephaly, a congenital brain malformation, a condition that has impaired her daily functions and development; she was also diagnosed with left side cerebral palsy. Plaintiff Monica Swift (Manning) is R.M.'s mother. In May 2010, SSD developed an Individualized Education Plan ("IEP") for R.M., under the IDEA, 20 U.S.C. § 1414(d)(1)(A)(i). The IEP called for such services as physical therapy and occupational therapy, and R.M received these services through pre-kindergarten.

In the summer of 2012, Plaintiff and R.M. moved to Riverview Gardens and Plaintiff enrolled R.M. in kindergarten in that district. Riverview Gardens was aware that R.M. had been receiving special education services pursuant to an IEP, but without notice to Plaintiff, SSD and the Riverview Gardens placed R.M. in a regular classroom where she did not receive special education services or therapies. In September or October 2012, SSD conducted a re-evaluation of R.M.'s development, without providing notice to Plaintiff. SSD determined that R.M. would not qualify for special education services after kindergarten. R.M. was kept in a regular classroom through kindergarten and first grade, without special education services.

In the beginning of second grade, R.M. was bullied at school, and after unsuccessful attempts to get Riverview Gardens to address Plaintiff's concerns for

R.M.'s safety, and Plaintiff's "abusive" encounters with school officials, Plaintiff transferred R.M. to a different school in the district on November 20, 2014. At about this time Plaintiff learned that R.M. had been removed from special education services. Plaintiff asked SSD and the Riverview Gardens to evaluate R.M. for an IEP and for services under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, but her request was denied.

In the summer of 2015, Plaintiff and R.M. moved to the Hazelwood School District and Plaintiff enrolled R.M. in third grade in that district. After R.M. attended school for one day, Hazelwood denied her access to the school on the ground that she did not satisfy Hazelwood's residency requirements. Approximately three months later, Hazelwood reversed its position and re-admitted R.M. to school. Shortly thereafter, Plaintiff requested that SSD and Hazelwood evaluate R.M. for special services, but the request was denied.

On November 4, 2015, Plaintiff filed a "due process complaint" against SSD with the Missouri State Board of Education and requested a hearing, as provided for under the IDEA, 20 U.S.C. § 1415(b)(1), (2) and (f). The matter was referred to the AHC, pursuant to state law. Following a pre-hearing conference call in December 2015, SSD and Hazelwood evaluated R.M. in February 2016 and determined that she was eligible for special education services (not including occupational or physical therapy). SSD moved to dismiss Plaintiff's complaint before the AHC, asserting that Plaintiff's claims were mooted by SSD's February 2016 evaluation and determination. The AHC granted

3

SSD's motion and dismissed Plaintiff's due process complaint as moot on March 4, 2016.

Plaintiff alleges that the AHC "colluded with representatives of SSD and/or their attorneys in an effort to give Hazelwood and SSD time to cover up their improper denial of [Plaintiff's] requests for an IEP and 504 evaluations for R.M," and that "AHC staff and/or their representatives altered the transcript of the pre-hearing conference call to give the appearance that [Plaintiff] had agreed to the actions taken by the [AHC], Hazelwood and SSD following the pre-hearing conference call." ECF No. 48 at 11.

Plaintiff did not appeal the dismissal of her due process complaint, as provided for by the IDEA, § 1415(g), but rather initiated this action pro se on March 8, 2016. In her three-count amended complaint prepared with the assistance of appointed counsel, Plaintiff asserts claims on her own behalf and on behalf of R.M. She asserts that by failing to provide R.M. with a free appropriate public education ("FAPE") as mandated by the IDEA, from September 2012 until March 2015, and failing to provide Plaintiff with required notice of various decisions affecting R.M.'s education, Riverview Gardens, Hazelwood, and SSD violated Section 504 of the Rehabilitation Act (Count I) and the IDEA (Count II). Plaintiff alleges that the three school districts "intentionally failed to provide R.M. a FAPE in bad faith due to their personal dislike of [Plaintiff]." ECF No. 23 at 13. Plaintiff asserts that as a result, R.M. has suffered delayed educational, physical, and mental development, and emotional distress; and that Plaintiff herself suffered emotional distress, medical expenses, and lost wages.

Count III asserts a claim against SSD and the AHC under 42 U.S.C. § 1983, based

on SSD and the AHC's alleged violations of Plaintiff's and R.M.'s due process rights in connection with the adjudication of Plaintiff's due process complaint, resulting in the same harms set out in Counts I and II, including R.M.'s delayed development and Plaintiff's lost wages and emotional distress. Plaintiff asks for essentially the same relief in each count, as follows:

>  (1) Ordering SSD and Hazelwood to properly evaluate R.M. and immediately implement an IEP designed to provide R.M. a FAPE as required by law;
>
>  (2) Awarding R.M. reimbursement of the expenses Riverview Gardens, Hazelwood, and SSD should have paid all along and would have borne in the first instance had they not illegally denied R.M. and Plaintiff their rights;
>
>  (3) Awarding R.M. compensatory damages for the FAPE she would have received had Defendants not violated her rights;
>
>  (4) Awarding Plaintiff compensatory damages for the harm she suffered as a result of Defendants' intentional violation of her rights;
>
>  (5) Awarding R.M. and Plaintiff punitive damages against Defendants to deter similar conduct in the future; and
>
>  (6) Other relief the Court determines to be just and equitable under the circumstances

ECF No. 48 at 16, 18, 19-20.

Plaintiff alleges that further administrative remedies cannot provide adequate relief for the damages she and R.M. have suffered, and that filing an additional due process complaint, or filing an appeal from the denial of the due process complaint she did file, would have been futile.

## ARGUMENTS OF THE PARTIES

The three school districts, including SSD, separately move to dismiss Plaintiff's amended complaint on the basis that the Court lacks subject matter jurisdiction over Plaintiff's claims against them due to her failure to exhaust the administrative remedies set forth in the IDEA; and Plaintiff's allegations are too conclusory to state a claim under the Rehabilitation Act. These Defendants also argue that the requests for actual and punitive damages under the IDEA should be stricken, as such damages are not available under that statute. In addition, Riverview Gardens and Hazelwood argue that any claims pursuant to the IDEA regarding the provision of special education services are not properly asserted against them, but may be asserted only against SSD. The AHC argues that, as an agency of the State of Missouri, it is immune from suit in this action.

In response, Plaintiff argues that the administrative remedies available to R.M. and Plaintiff at present are limited to providing a FAPE and/or accommodation of R.M.'s disabilities prospectively, which does nothing to remedy R.M.'s loss of more than three years of appropriate education during her formative years. Thus, she should not be required to exhaust her administrative remedies because the AHC has no ability to provide the relief to which Plaintiff and R.M. are entitled. Plaintiff concedes that compensatory and punitive damages are not available through the IDEA, but she argues that compensatory education and attorney's fees are. She further argues that her allegations are sufficient to state the claims she asserts. Lastly, Plaintiff maintains that that sovereign immunity does not preclude the due process/§ 1983 claim against AHC

because the Missouri statute that preservers sovereign immunity for state agencies, Mo. Rev. Stat. § 537.600.1, just applies to tort claims.

## DISCUSSION

## Claims under the IDEA (Count II)

The IDEA requires state and local educational agencies that accept federal funding to provide a FAPE to all children with certain physical or intellectual disabilities. *Fry v. Napoleon Cmty. Schs*, 137 S. Ct. 743, 748 (2017). A FAPE consists of special education and related services tailored to meet a child's unique needs. *Id*. at 748-49. Once a public educational agency accepts the IDEA's financial assistance, an eligible child acquires a "substantive right" to a FAPE. *Id*. at 749. "'The primary tool for implementing the aims of the IDEA is the IEP which tailors the statutorily required [FAPE] to each child's unique needs.'" *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist*., 721 F.3d 588, 592 (8th Cir. 2013) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Under the IDEA, a court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). "'Such relief' includes compensatory education services, but excludes general and punitive damage." *Birmingham v. Omaha Sch. Dist*., 220 F.3d 850, 856 (8th Cir. 2000); *R.M. v. City of St. Charles Pub. Sch. Dist*., No. 4:15-CV-706 CAS, 2016 WL 2910265, at *3 (E.D. Mo. May 19, 2016).

The IDEA establishes procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a FAPE. One safeguard is an opportunity to present complaints about the provision of a FAPE in "an impartial due process hearing,"

7

§1415(f), and the right to administratively appeal an adverse decision rendered in such a hearing, §1415(g). The outcome of this administrative process may then be challenged in district court. § 1415(i)(2)(A). The IDEA's preservation-of-rights and exhaustion provision, § 1415(l), provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).

In *Fry*, the Supreme Court held that "§ 1415(l )'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a [FAPE]. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA," such as claiming that "a school's failure to provide a FAPE also violated the Rehabilitation Act." *Fry*, 137 S. Ct. at 754.

> The reasons behind the exhaustion requirement are many, including: (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*S.A.S. ex rel. W.S. v. Hibbing Pub. Sch.*, No. CIV. 04-3204JRTRLE, 2005 WL 1593011, at *2 (D. Minn. July 1, 2005) (citation omitted); *see also J.B.*, 721 F.3d at 596 (stating

that two of the purposes of the IDEA exhaustion requirement are to develop the factual record and obtain the benefit of the agency's expertise with regard to IEP-related claims).

Plaintiff here concedes that she did not exhaust administrative remedies, but invokes two exceptions to the exhaustion requirement that are recognized by the Eighth Circuit and other circuits, namely, "futility" and an "inability of the administrative remedies to provide adequate relief." *See J.B.*, 721 F. 3d at 594; *Urban ex rel. Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996). However, the Court believes that Plaintiff's position is foreclosed by the recent Eighth Circuit decision, *J.M. v. Francis Howell School District*, 850 F.3d 944 (8th Cir. 2017). In that case, the Eighth Circuit rejected an argument similar to Plaintiff's here – that the plaintiff's claim was not subject to exhaustion because it sought relief not available under the IDEA, namely compensatory and punitive damages, and because the two noted exceptions to exhaustion applied. *J.M.*, 850 F.3d at 950-51; *see also Smith v. Rockwood R-VI Sch. Dist.*, No. 4:16-CV-1226-CEJ, 2017 WL 1633065, at *10 (E.D. Mo. May 2, 2017) (rejecting the argument that IDEA exhaustion was not required based on the inadequate remedy exception, where the complaint alleged that the denial of a FAPE resulted in emotional suffering of the student and the student's mother, who brought suit on the student's behalf and her own behalf).

Here, as in *J.M.*, Plaintiff seeks redress for education related injuries, and the necessity of an IEP is a "central dispute" of the litigation. *See J.M.*, 850 F.3d at 949. In such a situation, the Eighth Circuit has declared that "the exhaustion requirement remains

9

the general rule, regardless whether the administrative process offers the particular type of relief that is being sought." *Id*. (citing cases).

The Court has reviewed the cases cited by Plaintiff regarding the exceptions to exhaustion in this context and finds them unavailing because they are factually distinguishable or are from other circuits. For example, in *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000), the Sixth Circuit held that "in the unique circumstance" of a case in which the injured child had already graduated, such that money damages were the only remedy that could make him whole, exhaustion would be futile. *Covington*, 205 F.3d at 917. Here, as noted above, compensatory education damages are available under the IDEA. *See MB by RRB v. Islip Sch. Dist.*, No. 14CV4670SJFGRB, 2017 WL 1325367, at *8 (E.D.N.Y. Mar. 31, 2017) (limiting *Covington* to its specific facts and rejecting the plaintiff's reliance on that case). One of the cases relied upon by Plaintiff, *R.M.,* 2016 WL 2910265, was decided by a court in this district before *J.M.* was handed down by the Eighth Circuit. The Court notes that Plaintiff does not maintain that pursuing administrative relief would be futile, apart from her argument on the inability of administrative procedures to provide adequate relief, thereby conflating the two exceptions into one. *See Parrish v. Bentonville Sch. Dist.*, No. 5:15-CV-05083, 2017 WL 1086198, at *32 (W.D. Ark. Mar. 22, 2017).

In sum, Count II of Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

**Claims under Section 504 of the Rehabilitation Act (Count I)**

Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a prima facie case of disability discrimination under Section 504 of the Rehabilitation Act, the plaintiff must prove: "(1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) she was discriminated against based on her disability. *M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn.*, 439 F.3d 865, 867 (8th Cir. 2006) (citations omitted). "The plaintiff must also show bad faith or gross misjudgment" on the part of the defendant. *Id*. Claims under the Rehabilitation Act allow actual damages as a remedy, but not punitive damages. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

The Court concludes that Plaintiff's claims under the Rehabilitation Act are subject to the same exhaustion requirement as are her claims under the IDEA. As noted above, in *Fry*, the Supreme Court held that exhaustion of the IDEA's administrative procedures applies to claims under the Constitution and Rehabilitation Act (and other statutes for the protection of children with disabilities) when the remedy sought is for the denial of the IDEA's core guarantee of a FAPE. The Supreme Court further held that in determining whether a claim seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint. *Fry*, 137 S. Ct. at 752-58. Here, it

seems clear that the gravamen of Plaintiff's Rehabilitation Act claims against the school districts is based on the failure to provide a FAPE. This is evident upon review of the relief sought by Plaintiff in Count I. Thus, the IDEA's exhaustion requirement applies to Plaintiff's claims under the Rehabilitation Act, and Count I must be dismissed due to Plaintiff's failure to comply with this requirement.

It is true that "even when a plaintiff's IDEA claim fails for lack of jurisdiction [due to failure to exhaust administrative remedies], a Section 504 claim may still be considered," when the claim of unlawful disability discrimination "is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and [FAPE] decisions." *M.P.*, 439 F.3d at 868. Here, however, Plaintiff's Rehabilitation Act claim cannot be said to be wholly unrelated to the denial of a FAPE. *Cf. K.G. by Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, ___ F. Supp. 3d ___, 2017 WL 1098829, at *12 (N.D. Iowa March 23, 2017) (holding that IDEA exhaustion was not required to proceed with claims under the Rehabilitation Act alleging the unlawful and unreasonable use of physical force against a student who happened to be subject to an IEP.)

Plaintiff's allegations that Riverview Gardens did not address alleged bullying of R.M., and that Hazelton refused to admit Plaintiff for approximately 50 days, are not linked to allegations that these failure were due to disability discrimination. Moreover, pursuit by Plaintiff of the IDEA's administrative remedies provides "strong evidence that the substance of [Plaintiff's Rehabilitation Act claims] concerns the denial of a FAPE."

*See Fry,* 137 S. Ct. at 757. And Plaintiff's allegation that the school districts intentionally failed to provide R.M. a FAPE in bad faith due to their personal dislike of Plaintiff further supports this conclusion. In sum, Plaintiff's Rehabilitation Act claims may not proceed. *See Smith*, 2017 WL 1633065, at *8-10.

**Section 1983 Claim (Count III)**

The above conclusions, precluding Plaintiff's claims under the IDEA and the Rehabilitation Act due to her failure to exhaust administrative remedies, apply as well to her procedural due process claim against SSD and the AHC under § 1983 (to the extent §1983 is even available to remedy violations of the IDEA). The gravemen of Plaintiff's §1983 claim, as established by the relief she seeks in Count III, including her allegations of procedural irregularities and conspiracy in connection with the December 2015 conference call, is ultimately based on the denial of a FAPE for R.M, and thus the exhaustion requirement applies. *See, e.g., Dervishi v. Stamford Bd. of Educ.*, No. 3:13CV1260 (WWE), 2015 WL 13015998, at *3 (D. Conn. Sept. 15, 2015) (holding that § 1983 claim alleging non-compliance with IDEA procedures was subject to exhaustion requirement), *aff'd*, No. 15-3636-CV, 2016 WL 5852817 (2d Cir. Oct. 6, 2016); *cf. Hough v. Shakopee Pub. Sch.*, 608 F. Supp. 2d 1087, 1109-10 (D. Minn. 2009) (holding that a § 1983 claim did not require IDEA exhaustion where the claim arose from an alleged unlawful search of a disabled student at school; *K.G.*, 2017 WL 1098829, at *12 (same as to § 1983 claim of use of excessive force against a disabled student).

13

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motions to dismiss filed by Hazelwood School District (ECF No. 57); Special School District of St. Louis County (ECF No. 64), Riverview Gardens School District (ECF No. 66), and the Missouri Administrative Hearing Administration (ECF No. 61) are **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG  
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2017.